STEPHEN D. GRAFFLIN, Trustee, vs. JOHN A. ROBB, Register, et al.

*Trusts—Sale of Property Standing in the Name of Seller as Trustee.*

A party who was trustee in an equity case purchased certificates of the stock of a municipal corporation, the same being made out in his name as "trustee" without the designation of a particular estate. No order in that equity case directed this investment to be made, and there was no mention of such property in the records thereof. It was not shown that the stock was purchased with money belonging to the trust estate. Subsequently the trustee sold the stock to the municipality and received the money. Several years afterwards, when the trustee was a defaulter to said estate, a substituted trustee sought to hold the municipality liable for making the transfer of the stock without authority. *Held*, that the defendant was not liable.

While persons buying the trust property from a trustee are required to exercise reasonable care to ascertain if the trustee is acting within his authority, yet a purchaser is not liable for the misconduct of the trustee unless he could discover the nature of the trust from a reasonable examination of the records

Appeal from a decree of Circuit Court No. 2, of Baltimore City, (HARLAN, C. J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BOYD and ROBERTS, JJ.

*J. J. Wade*, for the appellant.

*Thos. Ireland Elliott, City Solicitor*, for the appellees.

FOWLER, J., delivered the opinion of the Court:

This is a clear case, although it has been somewhat complicated by a most ingenious and elaborate attempt to fasten a liability upon the appellee, when, as we think, agreeing fully in that respect with the learned Judge below, none whatever exists. Nearly thirty years ago Henry C. Wysham was appointed trustee to sell the real and personal property of Jacob Grafflin upon the terms and conditions and for the

purposes set forth in a deed of trust from said Grafflin to Hugh Davey Evans and others. In pursuance of the decree of the Circuit Court of Baltimore City so appointing him, Wysham sold the trust property and reported his sales which were subsequently ratified by that Court. He also filed several auditor's accounts by which the net proceeds of said sales were distributed according to the provisions of said deed of trust among the numerous children and grandchildren of the grantor. It appears, however, that some of the distributees desired to have their shares of the proceeds of sale invested, and for that purpose various applications by petition were made by them to the Court. But in every instance in which such investments were authorized to be made the property to be purchased was particularly described, and the power to make the investment was conferred upon Wysham. Otherwise he would have been without authority in that respect, having been appointed as trustee for the sole purpose of sale and distribution of the proceeds thereof. It also appears that certain investments in ground rents were made by Wysham in trust for Charles G. and Christopher L. Grafflin and their children respectively; but we have found no orders of Court authorizing such investments. The deeds, however, recite such orders, and it may be assumed, perhaps, that they were passed. But whether this be so or not is not material here, for the beneficiaries accepted the rents, and no complaint appears to have been made by them in respect to this action of Wysham. After making the investment in ground rents just mentioned it is claimed that there was a balance of $700 due each to Charles G. and Christopher L. or their children. And it is those two sums which it is sought to recover from the Mayor and City Council of Baltimore by these proceedings by the appellant, who, fifteen years ago was appointed trustee in the place of Wysham, who about that time left this State and has never since then returned. The ground upon which this claim against the city is based is that these two sums of $700 each were, on

or about the month of November, 1870, invested in the purchase of two certificates of Baltimore City water stock, each for $700, both of which were issued to said Wysham, trustee, and that they were subsequently sold by him to the appellant, Robb, Register of said city, and by him transferred to the Mayor and City Council for the purposes of the sinking fund. It is conceded that full value was paid to the trustee, but the proceeds having been appropriated by him to his own use, the claim is that the city must again pay the value of said water stock to the appellant trustee for the beneficiaries claiming in these proceedings, because of the fact that the stock stood in the name of the *trustee*, Wysham, which, together with the proceedings of record in the Circuit Court of Baltimore City in the matter of the trust estate of Jacob Grafflin, was sufficient to put the city as purchaser upon inquiry, and to impute to it knowledge of the object and purpose of the trust, and to give it notice that Wysham was about to commit a breach of trust.

While the law very properly requires all persons dealing with trustees, in reference to the sale or purchase of trust property, to exercise reasonable care to ascertain if such trustee is acting within the limits of his power, yet it does not establish an arbitrary rule which is or may be impossible to obey. Each case involving a transaction like the one before us must be considered and determined in the light of the facts therein presented. In some cases it would be gross negligence for a purchaser to deal with a trustee without making the most careful investigation—especially when ample and easily accessible information is spread out upon the records of the Courts having jurisdiction of trustees. But when such information cannot be so had, the mere failure to make the attempt to obtain it, which, if made, would be of no avail, ought not, we think, subject the purchaser to punishment. This Court has not yet said that the word "trustee" alone in any and every case in which a trustee proves recreant to his duty by selling the trust property and appropriating the proceeds shall be suffi-

cient to · give notice to the purchaser that a breach of trust
is about to be committed.    On the contrary our predeces-
sors said in · *Albert's case*, 2 Md: 159, that the proper in-
quiry in these cases is what circumstances there are in the
case which furnish reasonable ground to the purchaser that
a breach of trust was about to be committed.    And while
the fact that the person offering to sell holds the property
in a fiduciary capacity, as trustee or executor, should cer-
tainly put the purchaser upon inquiry, it would, we think,
be unreasonable to hold him liable for the misconduct of
the trustee unless by a seasonable and reasonable examina-
tion of the records of the proper Courts he could discover
the nature, extent and purpose of the trust.    But before he
could obtain this information, he must necessarily first as-
certain to what trust estate the property belonged.    We do
not think it possible to assume, as contended by the appel-
lant, that the stock in question must have belonged to the
Grafflin trust estate, and that the purchaser must have dis-
covered that fact if the record had been examined.    We do
not think it possible for any one with reasonable skill and
industry by the examination of the records, as before us, of
the proceedings in the cause pending in the Circuit Court
of Baltimore City, instituted for the purpose of selling the
trust estate of Jacob Grafflin, to have discovered any con-
nection whatever between that estate and the water stock
sold by Wysham, trustee, to the city.    No mention is made
of such an investment there, nor is there any order of
Court authorizing any of the trust funds to be invested in
such stock.    If the purchaser had made the examination
which it is contended and may be conceded the law would
require him to make, to free himself from liability if by
such investigation or examination the desired information
could have been obtained, it would have been discovered
that so far from any of the money of the trust estate hav-
ing been used in the purchase of the stock which Wysham
held as trustee, it was in fact bought by the proceeds of a
check drawn by him on an account in the Chesapeake

Bank standing in his name as attorney, which account upon its face related entirely to his business as such, and which is not shown by any direct evidence to have been made of any part of the moneys of the trust estate. It was argued upon inferences drawn from this account and certain pencil marks on one of the accounts of the auditor on file, and the dates of payments and investments made by Wysham as trustee, supplemented by certain calculations which are more ingenious than convincing, that it was perfectly apparent that the stock sold by Wysham to the city was held by him in trust for the beneficiaries now claiming it. But while such an investigation and calculation may be ingenious and convincing to some minds, we do not think it would be just under all the circumstances of this case to determine by it the rights of the parties now before us.

In the case of *Albert* v. *The Bank, supra*, it was said that the mere designation of the parties as trustees without a specification of the trust or designation of the *cestuis que trustent*, could not possibly give the city officer any information, and had he made inquiry in regard to the object and purposes of the trust there was no one to whom he could with propriety apply, but to the trustees themselves, for the entry upon his own books gave him no clue whatever." It is not to be assumed that the very person who is about to perpetrate a fraud upon the purchaser and to commit a breach of trust would, if interrogated, supply the information which would prove his perfidy. But whether the purchaser seeks information from the trustee and is deceived, or fails to do so, he should not be punished, in the absence of fraud on his part, if he could not by a reasonably careful investigation of the records or other proper sources discover the true state of the case.

We do not understand this Court to have reversed the ruling in *Albert's case, supra*, as applicable to the state of facts there disclosed, by any of the later decisions in respect to the fraudulent or illegal transfers by trustees. It is true that in *Marbury* v. *Ehlen*, 72 Md. 216, it was said that

the rule adopted in 2 Md., to the effect that the mere designation of parties as trustees without some other facts which could and should be ascertained, could not be held to inform the purchaser of the intended fraud, should be limited to cases "precisely" or "exactly" analagous in facts." We think the case before us is clearly within the rule as limited in 72 Md., for here, as in *Albert's case*, the mere designation of Wysham as trustee without the reasonable possibility of getting information from any other reliable source, should not be held to impute knowledge, because it was knowledge which could not in any way required by law have been obtained by the city.

Agreeing with the learned Judge below, the decree appealed from will be affirmed.

*Decree affirmed.*